Dalton GILL, Plaintiff,

v.

Diane STELLA, individually and in her official capacity as New York State Parole Officer, Hempstead, New York, and Richard Osikowicz, individually and in his official capacity as New York State Senior Parole Officer, Hempstead, New York, Defendants.

No. CV 92–3076.

United States District Court, E.D. New York.

March 5, 1994.

Dalton Gill, plaintiff pro se.

G. Oliver Koppell, Atty. Gen. of State of N.Y., Mineola, NY by Robert K. Drinan, Deputy Atty. Gen., for defendants.

## OPINION AND ORDER

SPATT, District Judge:

The Plaintiff Pro Se brings this action pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated by the Defendants' revocation of his parole. The Defendants move to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56(b) on the grounds that (1) they are shielded from liability by the doctrine of qualified immunity, and (2) the Plaintiff is collaterally estopped from raising his claims in this Court.

### BACKGROUND

The Plaintiff, Dalton Gill, was sentenced on July 13, 1988 by the County Court, Nassau County, to an indeterminate term of two to six years imprisonment for the crime of criminal sale of a controlled substance (crack) in the third degree. The conviction was affirmed by the Appellate Division, Second Department on June 19, 1989, 151 A.D.2d 692, 543 N.Y.S.2d 938, and application for a certificate granting leave to appeal to the New York Court of Appeals was denied on August 7, 1989. In June, 1990, Gill was released on parole.

As part of his conditions of parole, Gill agreed, among other things, to truthfully reply to any inquiry by the Parole Office, and not use any controlled substance without proper medical authorization. Gill also agreed, as part of his special conditions of parole, (1) to seek placement in an outpatient

drug treatment program, meet all appointments made with respect to the drug program, and not do anything to cause himself to be expelled from the drug program, (2) to go on three job interviews a day, five days per week, and notify the parole office at 9:00 a.m. on any day he was not searching for a job, (3) to keep a log of his employment contacts, and turn the log over to the parole office on a weekly basis, and (4) to observe a curfew.

According to the defendant Diane Stella, the parole officer responsible for supervising the Plaintiff, Gill told Stella during a scheduled office report on August 13, 1991, that he was working for a company named FALA Direct Marketing, and would be receiving a paycheck in three days. Gill promised to bring in the paycheck stub on his next scheduled visit in September. However, when Gill reported to Stella on September 10, 1991, he stated that he had been fired from the company as a result of discrimination. Subsequently, Stella received a letter from the company confirming that, although Gill had been interviewed for a job, he had never been hired.

Gill's next scheduled appointment with Stella was for October 8, 1991. On October 7, 1991, and October 8, 1991, Stella states that she received anonymous phone calls from a women who claimed that Gill was unemployed, collecting welfare, and using and selling drugs. When Gill reported to Stella on October 8th, he was questioned about his employment. Gill stated he was working for a Mr. Hunt, a subcontractor of Designer Carpet Installers, and was receiving $10 an hour. Gill produced a pay stub indicating $640.27 for 30 hours work, or $21.33 an hour. Stella noticed other information on the pay stub which contradicted Gill's claim that he received $10 per hour. Gill could not explain the discrepancies.

When asked whether he was on public assistance, Gill stated that he was, even though he was also employed. Stella also took a urine sample from Gill on that day, which was later found to be positive for cocaine. After the urine test, Gill was searched, and found to be in possession of cash, food stamps, welfare cards and a beeper. Gill claimed he needed the beeper for work.

Stella next called Hunt to ask if he employed Gill. Hunt answered "from time to time." Stella claims that when she asked Hunt whether he had recently paid Gill, Hunt was evasive and offered to call back in an hour after reviewing his records. Immediately after she got off the phone with Hunt, Gill's beeper went off. When activated, the following message was left by Hunt: "Very Important. I just got off a phone call from your parole officer and I need to know what to say to her. I don't want no shit. Call me." Subsequently, a subpoena was served on Hunt to produce Gill's employment records. Hunt failed to comply with the subpoena, and never contacted the parole office.

Stella played back the two other messages on Gill's beeper. Neither of these messages concerned any work for Hunt. The first message was: "Yo, you said $170 but I've got $130 call me." The second message was: "Very important that we meet at Smith Street Park." Stella states that Smith Street Park is off limits to parolees because of the incidence of drug dealing. Stella also claims that she was able to discover later that Gill had received 525 messages on the beeper in the first part of October, and 848 messages in September.

Stella alleges that at the end of Gill's October 8, 1991 visit, she conferred with a senior parole officer on whether to charge Gill with parole violations. Because the urinalysis would not come back on that day, and further questioning of Hunt was warranted, the senior parole officer decided to further investigate the matter, and not charge Gill that day. However, the parole office added as another special condition to Gill's parole that he not carry a beeper. Gill was also ordered to report weekly to the parole office.

On his visit of October 22, 1991, a urine sample was taken from Gill, which also proved to be positive for cocaine. The parole office also added as another special condition to Gill's parole that he report to the Roosevelt Counselling Center for drug counselling. Stella claims Gill refused to sign a consent to this condition. On his visit of

October 29, 1991, Stella confronted Gill with the positive results of his two urinalyses, and stressed that participation in the counselling program was imperative. Subsequently, the Roosevelt Counselling Center informed Stella that, Gill had not been admitted to that program because of frequent lack of attending scheduled appointments.

Gill failed to meet his scheduled weekly visits of November 5, 1991 and November 12, 1991. On November 8, 1991, the parole office imposed another special condition on Gill: that he seek admission to Topic House, a residential drug treatment program. Gill informed Stella that her assistance was required in order for Gill to be admitted into that program. However, when Stella made an appointment on November 19, 1991 to drive Gill to Topic House, he failed to appear. Stella again conferred with a senior parole officer, the defendant Richard Osikowicz, who this time directed that Stella proceed with a parole violation warrant. According to Osikowicz, his decision to revoke Gill's parole was based on: (1) the positive urine tests for controlled substances, (2) Gill's failure to participate in drug treatment programs, (3) the inaccurate and questionable information Gill provided about employment, and (4) Gill's repeated failure to appear on scheduled report days.

Gill was arrested when he appeared for his next scheduled visit to the parole office, on November 22, 1991, and was charged with fifteen violations of the conditions of his parole. According to the Defendants, he was searched and arrested without any physical incident. A beeper, date book, and car keys were taken from Mr. Gill. Stella notified the Nassau County Police Department that Gill's car was parked in front of the parole office, and that he was incarcerated. Stella claims that Gill executed a power of attorney to Janine Gray, and as a result, all of his property was released to her on December 17, 1991.

Among the fifteen charges for parole violation were allegations that Gill lied about his employment (charge 1); lied about the need for a beeper (charge 2); failed to appear at required office reports (charge 7); presented false documents about his employment (charge 12); used and possessed a controlled substance (charge 13); and failed to attend a drug program (charge 15).

Gill's preliminary parole revocation hearing was held on December 3, 1991. Stella was not present at that hearing, because she was on vacation. The defendant Osikowicz appeared on behalf of the Parole Office. At the conclusion of the hearing, the hearing officer found probable cause to believe Gill had violated the conditions of his parole. Subsequent to that hearing, Gill filed a petition for a Writ of Habeas Corpus in the Supreme Court of New York, Nassau County. Justice George A. Murphy denied the petition on January 24, 1992, finding that Gill had not been unlawfully detained under an unlawful commitment. *See People ex rel Gill v. Russi*, Trial Term Part II (Sup.Ct.Nassau Cty., 1992).

The final parole revocation hearing was held on February 27, 1991, March 2, 1991 and March 5, 1992. At that hearing, Gill testified that he failed to make the November 19, 1991 appointment at the parole office, because he had taken Janine Gray to St. Mary's hospital in Brooklyn in order to have her treated for a miscarriage. Ms. Gray also testified that Gill had taken her to the hospital on November 19, 1991, in order for her to be treated for a miscarriage, and produced a hand-written letter on the hospital letterhead stating she had been seen and treated for a miscarriage on that date. However, Stella contacted the hospital and received a letter from it on March 12, 1992 stating that the hospital had no record of ever treating Janine Gray on that day.

On March 18, 1992, the administrative law judge presiding over the revocation hearing sustained charges 1, 2, 12, 13 and 15, and imposed a sentence of twenty-three months imprisonment. The ALJ found that Gill had lied about his employment and use of the beeper, and that Gill had used cocaine, a controlled substance. Moreover, the ALJ found that Gill made no real effort to participate in a drug program, and that the letter from St. Mary's Hospital, offered to corroborate the excuse that Gill missed his November 19, 1991 appointment because he took Janine Gray to the hospital for treatment,

appeared to be spurious and not a genuine record.

Gill appealed the ALJ's determination to the Board of Parole Appeals Unit, which affirmed the ALJ's determination in December, 1992. Gill then brought another habeas corpus proceeding in the New York State Supreme Court, Nassau County, by initiating an Article 78 proceeding to annul the final parole revocation hearing decision. In his petition, Gill claimed that (1) his due process rights were violated when his request to call his mother as a witness was denied, (2) the Parole Board did not sustain its burden of proof, (3) the Parole Board failed to give him a final revocation hearing within ninety days of the probable cause determination, as required by New York state law, (4) evidence against him was improperly admitted, (5) the imposition of a twenty-three month sentence was excessive.

On May 26, 1993, Gill's writ of habeas corpus was denied, and the petition dismissed. *People ex rel Gill v. Russi*, Trial Term Part 24 (Sup.Ct. Nassau Cty., 1993). In a decision by Justice Goodman, the court found that the testimony of Gill's mother would have been limited to an issue pertaining to one of the violation charges which was dismissed, and thus no prejudice resulted to Gill by not letting his mother testify. The court also found that the state met its burden of proving each of the sustained charges by a preponderance of the evidence, and that because a parole revocation hearing had the attributes of an administrative hearing, the hearing officer need not follow the strict rules of evidence normally followed in a criminal trial.

As to the timeliness of the final hearing, the court held that the hearing was initiated within the ninety day period required by New York Executive Law § 259–i(3)(f)(i), and was reasonably adjourned for several days beyond that period at the request of Gill's attorney. Moreover, the court determined that a final hearing need not be completed within the ninety day period required by the state law; it was sufficient that the final hearing be initiated within that time. Finally, Justice Goodman held that the ALJ's

imposition of a twenty-three month sentence was not an abuse of discretion.

## THE PLAINTIFF'S COMPLAINT

During the pendency of Gill's appeal of the ALJ's ruling to the Board of Parole Appeals Unit, Gill initiated the present action by filing a complaint on June 30, 1992, pursuant to 42 U.S.C. § 1983. The complaint alleges violations of the plaintiff's rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and seeks declaratory relief and monetary damages against the defendants.

According to the Complaint, Gill alleges that upon being arrested, a gold medallion worth $2500 was taken from him, which was never returned. Moreover, Gill alleges that the entire parole violation report drafted by Stella, including the charges contained therein, was false and entirely fabricated by the defendants. In Gill's view, "[t]here was absolutely no evidence at the preliminary hearing to obtain probable cause to hold the plaintiff in jail." By not returning the medallion and conspiring to fabricate the charges, Gill alleges under the rubric of several counts that the Defendants, acting under color of state law, violated his Fourteenth Amendment rights by depriving him of liberty and property without due process of law.

Gill also alleges in another count that because Stella did not appear at the preliminary parole revocation hearing, he was deprived of his right to confront his accuser, in violation of his Fifth, Sixth and Fourteenth Amendment rights. In a final count, Gill claims that his incarceration without any due process is cruel and unusual punishment, and in violation of his Eighth Amendment rights. The complaint seeks relief in the form of a declaratory judgment that the defendants' actions, policies and practices violated Gill's constitutional rights, one million dollars in compensatory damages, one million dollars in punitive damages, and attorney's fees and costs.

## PRESENT MOTION BEFORE THE COURT

Before the Court is the defendants' motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint, or, in the alternative, for sum-

mary judgment pursuant to Fed.R.Civ.P. 56(b).

In support of their motion, the Defendants argue that (1) the Plaintiff's due process rights were not violated in so far as the alleged taking of Gill's gold medallion is concerned, because Gill has an adequate remedy under state law to pursue his claim for the medallion in the New York Court of Claims, (2) there was adequate evidence during the preliminary revocation hearing and final hearing that probable cause existed to revoke Gill's parole, (3) the issue of probable case has been fully adjudicated by the New York State Supreme Court, such that it is entitled to a collateral estoppel effect in this Court, and (4) the Defendants are entitled to the defense of qualified immunity.

The Plaintiff has not responded to the Defendants' motion.

## DISCUSSION

### Summary Judgment Standard

Because matters outside the pleadings were presented to and not excluded by the Court in determining the issues raised in this case, the Defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) has been treated as one for summary judgment pursuant to Fed.R.Civ.P. 56(b). *See* Fed.R.Civ.P. 12(b).

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990), and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c).

Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)); *National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Converse v. General Motors Corp.*, 893 F.2d 513, 514 (2d Cir.1990). The Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Rattner v. Netburn*, 930 F.2d 204 (2d Cir.1991).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Western World*, 922 F.2d at 121. Although the non-moving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment, Fed.R.Civ.P. 56(c) and (e) provide that the non-moving party cannot rest on the pleadings but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Although the defendants dispute the plaintiff's version of events, the Court finds that the disputed material issues do not preclude the granting of summary judgment in this case, because the issues raised by the Plaintiff's Complaint and the Defendants' motion can be resolved as a matter of law.

**1. The Eleventh Amendment Bars the Defendants from Being Sued in their Official Capacities.**

██ To the extent a suit seeks damages from defendants in their official capacities, the suit is, in effect, a suit against the state, and must be dismissed as barred under the Eleventh Amendment to the United States Constitution. *Hafer v. Melo*, —— U.S. ——, ———– –, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991); *Berman Enterprises, Inc. v. Jorling*, 3 F.3d 602, 606 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994).

■ However, the Eleventh Amendment does not extend to a suit for damages against state officials in their individual capacities, even when the conduct complained about was undertaken under color of state law. *Hafer,* —— U.S. at —— ——, 112 S.Ct. at 364–65. Where a complaint seeks damages from state officials in their individual capacities, the mere fact that the state may reimburse the defendants does not make the state the real party in interest for Eleventh Amendment purposes. *Jorling,* 3 F.3d at 606.

■ Moreover, a claim for declaratory relief under section 1983 is not barred by the Eleventh Amendment. The acts of state officials that violate federal constitutional rights are deemed not to be the acts of the state, and, thus, may be subject to injunctive or declaratory relief under the doctrine of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *See Jorling,* 3 F.3d at 606 (citing *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985)).

Accordingly, the plaintiff's complaint against the defendants in their official capacities, to the extent it seeks damages, is dismissed as a matter of law.

### 2. Determination of Constitutional Violation.

■ Before reaching the question of whether a defendant is entitled to the defense of qualified immunity, a court must first determine whether a constitutional violation occurred. *Siegert v. Gilley,* 500 U.S. 226, 231–32, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Calhoun v. New York State Division of Parole Officers,* 999 F.2d 647, 652 (2d Cir.1993). If a constitutional violation is not shown, then the Court need not reach the issue of qualified immunity. *Siegert,* 500 U.S. at ——, 111 S.Ct. at 1794.

The constitutional violations alleged by Gill in this case concern (i) the violation of Gill's due process rights under the Fourteenth Amendment, on the grounds that the defendants deprived Gill of property—a gold medallion—without due process of law, and fabricated all the parole violation charges against him; (ii) the violation of Gill's Sixth Amendment right to confront his accuser, on the ground that Stella did not appear at the preliminary parole revocation hearing; and (iii) the violation of Gill's Eighth Amendment rights, on the ground that Gill's incarceration is cruel and unusual punishment. The Court finds that each of these alleged violations is meritless.

### A. *Violation of Gill's Due Process Rights.*

(i) The Issue of Probable Cause Has Been Litigated in the State Court, Which Determination Has a Preclusive Effect in this Court.

■ Pursuant to 28 U.S.C. § 1738, a federal court applies the state law of collateral estoppel when determining the preclusive effect of a state court decision. *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Prior civil or criminal state court decisions can be used offensively or defensively as collateral estoppel in subsequent federal Section 1983 actions. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Collard v. Incorporated Village of Flower Hill,* 759 F.2d 205, 207 (2d Cir.), *cert. denied,* 474 U.S. 827, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985).

■ Under New York law, to invoke the doctrine of collateral estoppel there must be (1) an identity of issue which has necessarily been decided in the prior action and is decisive in the present action, and (2) a full and fair opportunity to contest the decision presently said to be controlling. *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 298 N.Y.S.2d 955, 959, 246 N.E.2d 725, 728 (1969); *Brown v. The City of New York,* 80 A.D.2d 596, 436 N.Y.S.2d 37, 38 (2d Dept. 1981); *Golino v. City of New Haven,* 950 F.2d 864, 869 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992); *Temple of the Lost Sheep Inc. v. Abrams,* 930 F.2d 178, 183 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991) (citing *Benjamin v. Coughlin,* 905 F.2d 571, 575 (2d Cir.), *cert. denied,* 498 U.S. 951, 111 S.Ct. 372, 112 L.Ed.2d 335 (1990)).

In this case, the New York Supreme Court found that "there is ample proper evidence for the hearing officer to have found that [Gill] violated his parole conditions," as charged in violations 1, 2, 12, 13 and 15, "by a preponderance of the evidence." Indeed, the Supreme Court stated, "were this Court to have heard the same testimony and to have received the same evidence, it would have reached the same conclusion as the hearing officer." The Supreme Court's decision resolved, in effect, that the defendants acted with probable cause in revoking Gill's parole, that the charges were not fabricated as alleged by Gill, and that the final revocation hearing did not violate any of Gill's due process rights.

Because Gill had a full and fair opportunity to litigate before the New York Supreme Court the issues he raises now concerning the sufficiency of the evidence offered at the revocation hearings to establish probable cause, Gill is estopped from raising these same issues in this case. The Court must give the state court determination preclusive effect. *Allen v. McCurry*, 449 U.S. at 102–04, 101 S.Ct., at 419–20; *Temple of the Lost Sheep*, 930 F.2d. at 185.

Accordingly, the Court finds that the defendants had probable cause to revoke Gill's parole, and did not conspire to fabricate the information contained in the charges against Gill for violation of the conditions of his parole.

(ii) Gill's Due Process Rights Were Not Violated by the Alleged Taking of His Gold Medallion.

As explained by the United States Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), property interests are not created by the federal Constitution, but are creatures of independent sources of law, such as state law. There is no doubt that, assuming there was a gold medallion as alleged by Gill, he had a property interest in it under New York law.

In *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court ruled that the crucial requirement a plaintiff must establish in a case claiming violation of due process under the Fourteenth Amendment, is that the deprivation of the plaintiff's property was without due process of law. *See* 451 U.S. at 537, 101 S.Ct. at 1914. Accordingly, a court must look to the state law remedies provided, in order to determine whether a means of redress exists to satisfy the requirements of procedural due process.

Where a pre-deprivation hearing is impracticable, as in the case of the willful or tortious loss of a prisoner's property resulting from the random and unauthorized acts of a state official, a state authorized post-deprivation hearing that offers a full and meaningful hearing to the plaintiff suffices for due process purposes. *Parratt*, 451 U.S. at 541, 101 S.Ct. at 1916; *see also Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984); *Kraebel v. New York City Dept. of Housing Preservation and Development*, 959 F.2d 395, 404 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 326, 121 L.Ed.2d 245 (1992); *Tigner v. State of New York Department of Corrections*, 559 F.Supp. 25 (W.D.N.Y.), *aff'd w'out opn.*, 742 F.2d 1432 (2d Cir.1983) (where prisoner's $5,000 bonds were lost, prisoner's due process claim was dismissed because state law offered adequate post-deprivation hearing by allowing prisoner to bring suit in New York State Court of Claims).

Like the prisoner in *Tigner*, Gill has an adequate post-deprivation remedy under state law to redress the alleged loss of his gold medallion: he can bring a suit in the New York State Court of Claims. Accordingly, under the rule of *Parratt* and its progeny, Gill has not been deprived of his property without due process of law.

B. *Violation of Gill's Sixth Amendment Rights.*

The Sixth Amendment right of an accused to confront the witnesses against him applies in criminal cases. Although a parole revocation hearing is not a criminal proceeding, *see Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972), and *People ex rel. Calloway v. Skinner*, 33 N.Y.2d 23, 30, 347 N.Y.S.2d 178, 181, 300 N.E.2d 716, 718 (1973), the Sixth

Amendment right to confront one's accuser seems to have been extended to a preliminary parole revocation hearing. In *Morrissey*, the Supreme Court held that, absent good cause shown, a parolee must be afforded the right, upon request, at a preliminary parole revocation hearing to have the person giving the adverse information on which parole revocation is based be available for questioning, in the parolee's presence. *See* 408 U.S. at 486, 92 S.Ct. at 2603.

Gill alleges that because Stella did not appear at the preliminary parole revocation hearing, he was deprived of his right to confront his accuser. However, the hearing officer found that there was good cause to excuse the appearance of Stella. Moreover, the senior parole officer who supervised Stella, the defendant Osikowicz, appeared on behalf of the Parole Office. Osikowicz was the superior who Stella reported to concerning Gill, was familiar with the conduct of Gill that violated the conditions of parole, and was the person who made the decision to issue the warrant to arrest Gill. As such, he is a person "who has given adverse information on which parole revocation is to be based." Accordingly, Gill had the opportunity at the preliminary hearing to confront witnesses giving the adverse information against him, and his Sixth Amendment rights as prescribed in *Morrissey* were not violated.

### C. *Violation of Gill's Eighth Amendment Rights.*

 Incarceration does not constitute cruel and unusual punishment. Rather, after incarceration, only the "unnecessary and wanton infliction of pain," constitutes cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977) (citations omitted). *Cf. Calhoun, supra*, 999 F.2d at 654 (to establish § 1983 liability under Eighth Amendment, plaintiff must show defendant's were deliberately indifferent to prisoner's plight).

 Moreover, in deciding Gill's habeas corpus petition, the New York Supreme Court held that the ALJ's imposition of twenty-three months incarceration was not an abuse of discretion, or excessive. As previously explained, this Court must give that

determination preclusive effect. Gill's Eighth Amendment Rights were, therefore, not violated by his incarceration for twenty-three months.

As a result of the above determinations that none of Gill's constitutional rights were violated by the Defendants' actions, this Court need not reach the issue of qualified immunity. *Siegert*, 500 U.S. at ——, 111 S.Ct. at 1794; *Temple of the Lost Sheep*, 930 F.2d at 185.

### 3. The Plaintiff's Request for Declaratory Relief.

 Gill's remaining request for relief is a declaration that "the defendants' acts, failure to act, policies and practices described [in the complaint] violated the plaintiff's rights under the United States Constitution."

The Court has already determined that the Defendants' acted with probable cause, did not fabricate the parole violation allegations in the charges against Gill, and that there was no violation of Gill's constitutional rights. Accordingly, Gill's request for declaratory relief is denied, as a matter of law.

### CONCLUSION

The Plaintiff's claims for monetary damages against the Defendants in their official capacities as parole officers is barred by the Eleventh Amendment of the United States Constitution. With respect to the allegations against the Defendants in their individual capacities, the Court finds that the Plaintiff's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution were not violated by the Defendants' actions.

Accordingly, the Plaintiff's request for declaratory and monetary relief is denied, and the Complaint in this case is dismissed in its entirety as a matter of law. Leave to replead is not given because it would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

The Clerk of the Court is advised that this action closes the case.

### SO ORDERED.