**Berlinda BRUNDIDGE, Plaintiff,**

v.

**CITY OF BUFFALO; R. Gil Kerlikowske, Commissioner of Police, City of Buffalo; Detective L. Kelley, D. Fitzgibbon, H. Velez, and J. Walker, Officers of the City of Buffalo Police, Defendants.**

No. 95–CV–0109C(F).

United States District Court,
W.D. New York.

Nov. 19, 1999.

Albrecht, Maguire, Heffern & Gregg, P.C. (Richard A. Braden, of counsel), Buffalo, NY, for Plaintiff.

Michael B. Risman, Corporation Counsel of City of Buffalo (Susan P. Wheatley, Assistant Corporation Counsel, of counsel), Buffalo, NY, for City of Buffalo Defendants.

Kenneth A. Schoetz, Erie County Attorney (George Michael Zimmerman, Assistant County Attorney, of counsel), Buffalo, NY, for Erie County Defendants.

## DECISION and ORDER

CURTIN, District Judge.

### INTRODUCTION

Plaintiff Berlinda Brundidge filed this action in February 1995 alleging that on the evening of November 20, 1993, defendants violated 42 U.S.C. § 1983 and committed various tortious acts. Currently before the court are motions *in limine* filed by both parties, seeking the exclusion of certain evidence at trial. *See* Items 53–57.

### BACKGROUND

Defendants Lilton Kelley ("Kelley"), Henry Valez ("Valez"), and Johnnie Walker ("Walker") are Detectives with the City of Buffalo Police Department. Defendant Dennis Fitzgibbon ("Fitzgibbon") is a Deputy Erie County Sheriff. In November 1993, defendants were assigned to the Street Narcotics Attack Program, also called the "SNAP" Unit. SNAP is a collaborative effort of City and County law enforcement to eliminate narcotic sales within the City of Buffalo.

On the evening of November 20, 1993, defendants' SNAP Unit was monitoring activity at 363 Plymouth Avenue. Suspecting that the plaintiff was trafficking drugs out of the house, defendants procured a search warrant for plaintiff's second floor apartment. It is alleged that between 8 p.m. and 9 p.m., defendant Kelley and another member of the SNAP Unit, acting undercover, entered plaintiff's apartment hoping to exercise a "buy bust." Kelley allegedly gave plaintiff some money, and plaintiff then left the apartment promising to return in a minute with some crack cocaine.

When plaintiff failed to return in fifteen minutes, Kelley and the other undercover officer allegedly left plaintiff's apartment and went downstairs to the lower apartment, where they were joined by defendants Valez, Walker, and Fitzgibbon. Upon entering the first floor apartment, defendants identified themselves as police officers. What happened next is is the central issue in this case. Plaintiff alleges that the male officers strip-searched her in front of her friends and family. Defendants deny that a strip search ever occurred. It is undisputed, however, that plaintiff was arrested after some type of search of her person revealed a bag of crack cocaine.

A grand jury indicted plaintiff on the felony crimes of Criminal Sale of a Controlled Substance in the Third Degree (New York Penal Law § 220.39) and Criminal Possession of a Controlled Substance in the Third Degree (New York Penal Law § 220.16). However, Erie County Court Judge Joseph P. McCarthy dismissed the indictment, finding that the search and seizure of the plaintiff were unlawful and in violation of plaintiff's constitutional rights. Item 56, Exh. C.

Subsequent to the dismissal of her criminal indictment, plaintiff filed this civil suit against defendants. In her complaint,·

plaintiff seeks relief under 42 U.S.C. § 1983 and alleges various common law torts. On April 14, 1999, the court dismissed plaintiff's tort law claims for lack of merit. On May 3, 1999, defendants City of Buffalo and R. Gil Kerlikowske were dismissed for lack of personal involvement. As such, the only claim which remains before the court is the allegation that defendants violated plaintiff's constitutional rights under 42 U.S.C. § 1983.

## DISCUSSION

■ The trial date for the current action is scheduled for December 13, 1999. For various reasons discussed below, defendants and plaintiff request that this court determine whether certain pieces of evidence and information are admissible at trial. In this Circuit, the party seeking admission of evidence has the burden of showing that the prerequisites for its admissibility are met. *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.,* 38 F.3d 627, 632 (2d Cir.1994).

### A. Statements by William Ragan

■ At plaintiff's criminal trial, Assistant District Attorney William Ragan stated on the record that: "[I]t is my opinion Your Honor, that the arrest and the search were without legal foundation and I concede that both the arrest and seizure was [sic] illegal." Item 56, Ex B. Defendants argue that this statement is hearsay and, thus, inadmissible at trial. Plaintiff contends that Mr. Reagan's comment is admissible as an adoptive, authorized, or vicarious admission under Rule 801(d)(2) of the Federal Rules of Evidence.

Rule 801(d)(2) of the Federal Rules of Evidence states that an admission by a party-opponent is not hearsay if it is:

offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), the agency or employment relationship and scope thereof under subdivision (D), or the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

According to plaintiff, Assistant District Attorney William Ragan is an agent for the defendants because he represented the County in its prosecution of plaintiff on her criminal indictment. Plaintiff cites the Ninth Circuit's decision in *Hoptowit v. Ray,* 682 F.2d 1237, 1262 (9th Cir.1982), which held that when a statement is "offered against a party and is ... a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship," the law favors admission under Rule 801(d)(2)(D). Plaintiff also cites a Fourth Circuit decision, holding that an extra-judicial admission made by the County Attorney on behalf of the Sheriff was admissible. *U.S. v. Gregory,* 871 F.2d 1239, 1243 (4th Cir.1989).

However, *Hoptowit* and *Gregory* are factually distinct from the present case. In both of these cases, the court admitted statements from the attorneys who represented the defendants in civil actions. Assistant District Attorney Ragan never represented defendants in this civil suit brought by Ms. Brundidge. In fact, it is clear from Ragan's affidavit that his only involvement with the present case is that he represented the People of the State of New York (not a party to this suit) in the case of *People v. Berlinda Brundidge* (Erie County Indictment Number 93–

2626–001). At no point during those proceedings did Ragan act on behalf of any law enforcement officers. It is also clear that Ragan is not and never has been an agent for the defendants, nor has he ever been given authority to speak on defendants' behalf.

■ Furthermore, plaintiff fails to present any evidence indicating that any of the defendants manifested an adoption or shared a belief in the statement Ragan delivered at plaintiff's criminal trial. Defendants' arrest of the plaintiff on the evening of November 22, 1993, demonstrates the opposite. As such, no relationship exists between the declarant and defendants for the purpose of Rule 801(d)(2) of the Federal Rules of Evidence.[1]

### B. Judge McCarthy's Order

■ Plaintiff also seeks to introduce Erie County Judge Joseph P. McCarthy's order ("the Order") declaring that the search and seizure of plaintiff was "[u]nlawful and in violation of [her] constitutional rights . . . ." Item 56, Exh. C. The problem with admitting the Order is that Judge McCarthy never indicated whether his decision to dismiss plaintiff's criminal case was based on State law, Federal law, or both. The Order merely states the dismissal was based upon William Ragan's statement that the search was illegal.

New York Search and Seizure Law provides greater protection to criminal defendants than the Fourth Amendment. *See People v. Hollman*, 79 N.Y.2d 181, 581 N.Y.S.2d 619, 590 N.E.2d 204 (1992). Conduct that is unlawful under the New York State Constitution is not necessarily unlawful under the Fourth Amendment. Thus, it is possible that Judge McCarthy dismissed plaintiff's criminal indictment because of State, not Federal, violations. If this is in fact true, the Order is irrelevant to the present action.

Given the ambiguity of the Order, its prejudicial value far outweighs its probativeness. It would be extremely unfair and highly prejudicial to defendants to allow the Order into evidence, as the jury could easily misconstrue the value and meaning of Judge McCarthy's Order as it relates to the determination that the jury will have to make. As written, the prior decision would only serve to confuse rather than clarify for the jury whether defendants violated plaintiff's Constitutional rights.[2]

Accordingly, plaintiff may elicit information as to the outcome of her November 20, 1993, arrest, but Judge McCarthy's Order cannot be submitted into evidence or read to the jury.

### C. Evidence Regarding Defendants' Warrantless Entry into the Lower Apartment

■ Plaintiff seeks to introduce the fact that defendants entered the first floor apartment without a warrant as evidence that defendants had a disregard for the law or harbored bad intentions on the evening of November 20, 1993. Defendants contend that the warrantless entry into the

---

1. Moreover, Ragan's statement is inadmissible under Rule 803(8) because the statement was an opinion rather than a finding of fact. The statement also appears to be barred by Rule 401 of the Federal Rules of Evidence as irrelevant. As indicated in Ragan's affidavit, his statement at plaintiff's criminal trial was based on knowledge of New York State law and not Federal law. Item 53. A legal opinion based on State criminal law is irrelevant to the Federal civil rights issues in dispute here. Accordingly, plaintiff fails to meet her burden of proving that Ragan's statements at her criminal trial are admissible in this civil action.

2. Although the Second Circuit has yet to rule on this issue, other circuits have excluded prior judicial opinions as irrelevant under Rule 403 of the Federal Rules of Evidence. In each case, the courts determined that the prejudice to defendants in admitting a prior judicial decision significantly outweighed the prior decision's probative force. *See Carter v. Burch*, 34 F.3d 257, 265 (4th Cir.1994) (affirming exclusion of prior judicial letter opinion); *see also Johnson v. Ford Motor Co.*, 988 F.2d 573, 579–81 (5th Cir.1993).

first floor apartment is irrelevant to the present case; and even if it was relevant, any introduction of that evidence is more prejudicial than probative, and thus should be excluded.

Evidence is relevant and thus admissible if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R. Evid. 401. However, even relevant evidence can be excluded if its probative value is outweighed by the prejudice that the evidence would cause to the opposing party. Fed.R.Evid. 403.

The issue in this case is whether plaintiff was subjected to a strip search; and, if so, whether the strip search violated plaintiff's Constitutional rights. As such, the fact that defendants entered the first floor apartment without a warrant is relevant only if the entry makes it more or less probable that defendants conducted an unconstitutional strip search of the plaintiff.

■ Plaintiff argues that defendants' warrantless entry demonstrates that they were in a lawless state of mind when they arrested the plaintiff. This argument, however, is flawed. It is well established that warrantless searches, although discouraged, are not unlawful per se. Defendants could have believed that they had a right to enter the apartment due to exigent circumstances. *Coolidge v. New Hampshire*, 403 U.S. 443, 445, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *see also United States v. Brown*, 52 F.3d 415, 421 (2d Cir.1995). Thus, it is questionable as to whether defendants' entry into the first floor apartment was unlawful.

In any event, the court agrees with defendants that the admittance of their warrantless entry is more prejudicial to their case than probative to the plaintiff's. Admitting evidence that defendants entered the first floor apartment without a warrant could confuse the jury into thinking that the entry into the apartment was necessarily unlawful; and that, consequently, the search of the plaintiff was unlawful. As discussed above, warrantless searches, although discouraged, are not unlawful per se. Accordingly, the potentially prejudicial nature of the warrantless entry requires it to be precluded.

**D. The Testimony of Dr. Seyfried**

■ The issue here is whether Dr. Seyfried, as a treating physician, should be allowed to testify to the status and cause of plaintiff's mental health. Defendants contend that plaintiff cannot offer opinion testimony without first being qualified as an expert witness. Plaintiff asserts that because Dr. Seyfried will not provide opinion evidence regarding liability, there is no need to disclose her as an "expert" pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

Treating physicians testifying to their personal consultation with a patient are not considered expert witnesses pursuant to Fed.R.Civ.P. 26(b)(4)(C). *Mangla v. Univ. of Rochester*, 168 F.R.D. 137 (W.D.N.Y.1996); *see also Baker v. Taco Bell Corp.*, 163 F.R.D. 348 (D.Colo.1995) (holding that two doctors who treated an accident victim were ordinary witnesses testifying as to their personal treatment of the patient); *Salas v. United States*, 165 F.R.D. 31 (W.D.N.Y.1995) (holding that five doctors called to testify regarding their treatment and "opinion[s] with respect to the injuries or illnesses sustained as they causally relate to this incident and his/her opinion as to permanency" were not subject to the more extensive expert-witness requirements of Fed.R.Civ.P. 26(a)(2)(B)). Experts are retained for purposes of trial, and their opinions are based on knowledge acquired or developed in anticipation of litigation or for trial.

A treating physician's testimony, however, is based on the physician's personal knowledge of the examination, diagnosis, and treatment of a patient, and not on information acquired from outside sources. *Mangla*, 168 F.R.D. at 138 (citing *Baker*, 163 F.R.D. at 349). As the court observed in *Baker*, merely because treating physi-

cians may be asked at a deposition to offer opinions based on their examination of a patient, that

> does not mean that treating physicians do not have an opinion as to the cause of an injury based upon their examination of the patient or to the degree of injury in the future. These opinions are a necessary part of the treatment of the patient. Such opinions do not make the treating physicians experts . . . .

*Id.* at 349.

Based on this analysis, plaintiff may call Dr. Seyfried to testify as to her treatment of plaintiff, and Dr. Seyfried can offer her opinion as to what caused plaintiff's mental problems as long as her opinion is based solely on her treatment of the plaintiff.

### E. Criminal Convictions of the Plaintiff and Witnesses

Plaintiff asks the court to bar defendants from introducing evidence or making inquiries as to her criminal history and/or the criminal history of her witnesses. She argues that the information is irrelevant and, in the alternative, more prejudicial than probative. Defendants contend that the deciding factor in this case rests on the credibility of the witnesses, and as such, the finder of fact is entitled to information which provides "a full picture of each witness." Additionally, defendants contend that any prejudice to plaintiff or her witness is outweighed by the probative value that the criminal records impart.

It is well established that plaintiff's criminal history and the criminal history of her witnesses are irrelevant to the main issue in this case (*i.e.,* whether defendants performed an unconstitutional strip search) and thus cannot be introduced as part of defendants' argument in chief. However, once the plaintiff or her witnesses take the stand, certain portions of their criminal records can be used for impeachment purposes on cross-examination pursuant to Rule 609 of the Federal Rules of Evidence.

Rule 609 governs the admissibility of criminal convictions for impeachment purposes in civil actions. Rule 609(a) authorizes the admissibility of such evidence under two circumstances. First, Rule 609(a)(1) permits the impeachment of a witness with convictions punishable by imprisonment in excess of one year, subject to Rule 403. Second, evidence that a witness has been convicted of a crime involving "dishonesty or false statement" must be admitted regardless of the severity of the punishment or any resulting prejudice. Fed.R.Evid. 609(a)(2).

#### 1. Plaintiff's Convictions of Criminal Impersonation

■ Clearly, under Rule 609(a)(2), plaintiff may be questioned regarding her June 1983 and December 1985 arrests and convictions for Criminal Impersonation in the Second Degree (N.Y. Penal Law § 190.25), as those crimes bear directly upon her honesty as a person.

#### 2. Convictions Involving the Sale or Possession of a Controlled Substance

■ In 1994, plaintiff was convicted of Criminal Sale of a Controlled Substance (N.Y. Penal Law § 220.39) a Class "B" felony under New York State Law. Also, in 1994 Gloria Bernard, one of plaintiff's witnesses, was convicted of Criminal Possession of a Controlled Substance. Another of plaintiff's witnesses, Rudolf Bernard, was also convicted of Criminal Possession of Controlled Substance in 1993. These convictions are all felony convictions and have been confirmed as such. As indicated above, evidence of a crime that does not involve dishonesty or false statements may be admitted to impeach a witness in a criminal or civil action if the crime was punishable by death or imprisonment in excess of one year and the court determines that the probative value of admitting the evidence outweighs its prejudicial value. Fed.R.Evid. 609(a)(1); *see also,* Fed. R.Evid. 403; *Daniels v. Loizzo,* 986

F.Supp. 245, 250 n. 7 (S.D.N.Y.1997) (explaining that the balancing test of Rule 609(a)(1) applies to both criminal and civil cases).

Courts have often identified four factors that should be considered in balancing probative against prejudicial effect: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness. *See* 4 Weinstein's Federal Evidence § 609.04[2][a], at 609–20 (1997); *see also Daniels*, 986 F.Supp. at 250.

The impeachment value of plaintiff's prior crime (*i.e.*, Sale of a Controlled Substance) and the crimes of her witnesses rank high on the scale of veracity-related crimes, *see United States v. Hayes*, 553 F.2d 824, 828 (2d Cir.1977) (finding conviction for drug smuggling admissible under Rule 609(a)(1) because crime was probative of accused's veracity); *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir.1977) (finding heroin sales conviction probative of accused's veracity); *United States v. Feola*, 651 F.Supp. 1068, 1126–27 (S.D.N.Y.1987) (finding narcotics conspiracy conviction probative of accused's veracity), although not so high as to fall clearly within Rule 609(a)(2). In addition, the drug conviction bears on plaintiff's credibility and the credibility of her witnesses because the convictions remove any misperceptions that they are model citizens. *See Daniels*, 986 F.Supp. at 250 (citing *Young v. Calhoun*, No. 85 Civ. 7584, 1995 WL 169020, at *4 (S.D.N.Y. April 10, 1995)).

The convictions are also rather recent and therefore should not be precluded for remoteness reasons. All of the convictions at issue occurred in 1994 or 1993. As such, they are not so remote as to diminish the probative value. *See Daniels*, 986 F.Supp. at 250. The nature of the felony convictions at issue further supports defendants' requests to cross-examine plain-

tiff and her witnesses on their respective criminal histories. The current action involves a civil rights claim; and as such, the jury will not determine whether plaintiff or her witnesses committed additional crimes or harbor criminal tendencies. Courts have allowed witnesses to be cross-examined on past crimes where the conviction at issue bears no resemblance to the current action. *See Daniels*, 986 F.Supp. at 250; *see also Lewis v. Velez*, 149 F.R.D. 474, 481 (S.D.N.Y.1993).

The fourth and final criteria further support a decision to subject plaintiff and her witnesses to cross-examination on their drug convictions. The narration of events by plaintiff and her witnesses are radically different with that of the defendants. As such, this case will rest on which side the jury finds most credible. Essentially, the jury's main task will be to determine who is telling the truth. Plaintiff's credibility on the stand and the credibility of her witnesses' are therefore matters of great importance and outweigh any prejudice that may result.

■ Accordingly, defendants may cross-examine plaintiff and her witnesses as to their past convictions of drug-related crimes. However, defendants may not cross-examine plaintiff's reincarceration following her participation in a work-release program, as that matter does not have the same probative value. As such, that information is not admissible under Rules 403 and 609(b) of the Federal Rules of Evidence.

As to defendants' request to question plaintiff regarding her deposition statement that she had never been arrested by any of the defendants prior to 1994, Item 53, Exh. A, pp. 105–06, there is no reason why defendants should be precluded from questioning plaintiff as to a factual discrepancy in her deposition testimony. Defendants may also question plaintiff about her state of mind at the time of the incident.

**F. Admissibility of Plaintiff's Use of Aliases and Social Security Numbers**

■ Although the Second Circuit has not specifically addressed this issue, dis-

trict courts in the circuit, specifically the Southern District of New York, have allowed plaintiffs to be cross-examined on their uses of false names and phony Social Security numbers under Fed.R.Evid. 608(b). *See Fletcher v. City of New York*, 1999 WL 428412 (S.D.N.Y.); *see also Young v. C.O. Calhoun*, 1995 WL 169020 (S.D.N.Y.). Both cases cite with approval the language of the Ninth Circuit in *Lyda v. United States*, 321 F.2d 788, 793 (9th Cir.1963):

> The issue is whether the use of false names bears directly enough upon the witness' veracity as to outweigh the general prohibition against cross-examining about particular acts of misconduct other than convictions of a crime. We think it does. If a man lie about his own name, might he not tell other lies?

The Eighth Circuit made a similar ruling in *United States v. Ojeda*, 23 F.3d 1473, 1477 (8th Cir.1994). Based on these cases, defendants are entitled to cross-examine plaintiff as to her use of aliases and false Social Security numbers.

### G. Testimony of Clydell Rivers

At the oral argument held on August 30, 1999, plaintiff indicated that because she could not locate Mr. Rivers, it is unlikely that she will call him as a witness. The City of Buffalo has subpoenaed Mr. Rivers several times in this past year, but Mr. Rivers has failed to appear for questioning. In the event that Mr. Rivers is suddenly located, defendants wish to question him before he takes the stand on plaintiff's behalf.

Given that neither party is able to locate Mr. Rivers, his potential appearance or testimony is, for the moment, purely speculative. As such, the court defers its decision on this issue until such time that Mr. Rivers is in court and ready to take the stand as a witness.

### H. Plaintiff's Criminal History and Drug Abuse

Defendants request permission to introduce at trial a theory that suggests that whatever mental anguish plaintiff suffers from, it is most likely related to her history as a criminal, drug user, and prostitute. More specifically, defendants argue that history of self-inflicted abuse is much more likely the cause of plaintiff's mental anguish than a search incident which lasted no more than a few minutes. Defendants want the jury to be aware of the lifestyle that the plaintiff has chosen when deciding what damages actually resulted from the search incident. Defendants assert that plaintiff's history of such activity is admissible on the issue of damages under Rule 404(b) of the Federal Rules of Evidence.[3] Moreover, they further argue that the list of exceptions under Rule 404(b) is not exhaustive, but rather was intended to encompass this situation in which the issue of damages is in controversy.

The court finds defendants' interpretation of Rule 404(b) overly expansive. Through cross-examination, the jury will most likely be made aware of the plaintiff's past so that they may properly decide on what damages, if any, should be awarded to plaintiff. Without case law establishing the opposite, the defendants' pre-contrived theories are prejudicial and inappropriate. The cause of plaintiff's emotional distress is a question of fact for the jury.

So ordered.

3. Rule 404(b) of the Federal Rules of Evidence, entitled "Other crimes, wrongs, or acts," states in relevant part that "[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."