Larry TURNER, Plaintiff,

v.

John WHITE, et al., Defendants.

No. 95 CV 4822 CLP.

United States District Court, E.D. New York.

Feb. 7, 2005.

Larry Turner, Niagara Falls, NY, pro se.

William R. Bennett, III, Bennett, Giuliano, McDonnell & Perrone, LLP, New York, NY, for Plaintiff.

Michael J. Keane, Office of the Attorney General, New York, NY, for Defendants.

### ORDER

POLLAK, United States Magistrate Judge.

On November 22, 1995, plaintiff Larry Turner, proceeding *pro se*, initiated this action against defendants John White and Michael Kass, parole officers employed by the New York State Division of Parole. Following discovery, the parties consented to have the undersigned oversee the trial in the case.

On February 3, 2006, defendants filed a series of motions *in limine*, seeking to: (1) preclude plaintiff from pursuing his claims against the officers under a Fourth Amendment analysis; (2) preclude plaintiff from offering testimony that his seizures were the result of defendants' conduct; (3) preclude plaintiff from introducing any reference in the medical records to defendant White's alleged use of force; (4) preclude plaintiff from asserting any state law claims for intentional infliction of emotional distress; and (5) introduce evidence of plaintiff's and his sister's prior felony arrest records for impeachment purposes. For the reasons set forth below, defendants' motions are granted in part and denied in part.

## BACKGROUND

In his initial Complaint filed on November 22, 1995, plaintiff sought damages from Officers White and Kass based on an incident that plaintiff alleged occurred on December 20, 1993.[1] In his form Complaint, plaintiff alleged that:

(1) On or around Dec. 20, 1993[,] Mr. White acting as a parole officer physically abused me by slamming my head against a wall for no reason. He mentally abused me by not adhiering [sic] to medical advise [sic] as to my handicap, and caused serious mental problems to which to date I still suffer from. Mr. White and Mr. Kass acting as White's Supv. were advised as to my medical problem. They both understood that I had a bullet lodged in my skull, rendering [me] handicapped, with limited mental capacities. They both disregarded my condition and show[ed] no concern whatsoever. The slamming incident along with personal harassment, caused me to have serious seizures....They also handcuffed me to various fixed objects for lengthy periods of time for no reason, causing me to have mental defects, and they disregarded my condition.

(2) Both Mr. White and Kass showed thru [sic] their actions intent and knowledge to deliberate indifference.

(3) White and Kass acted beyond bounds of their special authority, based on parole officers beating and handcuffing without provocation. U.S.C.A. Const. amend. 11.

(Compl. at 3–4). Other than citing to the Eleventh Amendment, the Complaint contained no reference as to the statutory or constitutional bases on which plaintiff was seeking to assert his claims. (*See id.*)

On or about February 11, 1997, plaintiff, still proceeding *pro se*, submitted a proposed Amended Complaint in which he described in more factual detail the events leading up to the incident complained of in the initial Complaint. He also added factual information, including specific dates, regarding several other encounters with the officers, explaining in greater detail the actions allegedly taken by the officers. Plaintiff did not, however, further explain his legal theories nor did he cite any statutory or constitutional bases for his claims.

On or about September 15, 1997, defendants filed a motion for summary judgment before the Honorable Eugene H. Nickerson, the district judge to whom the case had been assigned at that time. Framing plaintiff's claims as an action brought pursuant to 42 U.S.C. § 1983, based on alleged violations of the Eighth Amendment's prohibition on cruel and unusual punishment, defendants raised several arguments: (1) plaintiff's claims against the defendants in their official capacity were barred by the Eleventh Amendment; (2) plaintiff failed to state a cognizable claim under Section 1983; (3) plaintiff's claims for money damages were barred by qualified immunity; and (4) as a matter of law, plaintiff had failed to establish a claim of a constitutional violation.

On April 30, 1998, Judge Nickerson issued a Memorandum and Order, granting defendants' motion for summary judgment in part, finding that the Eleventh Amendment barred plaintiff's claims for damages against the officers in their official capacity to the extent that plaintiff was claiming

---

1. The Complaint originally indicated that the incident occurred on August 20, 1993, but "August" is scratched out and the notation "Dec." is written in hand above it. (*See* Complaint dated August 3, 1995 ("Compl.") at 3). Apparently, the actual date of the incident was October 13, 1993. (*See* Memorandum and Order, dated April 30, 1998 ("Mem. and Order") at 7).

that they violated his rights by ordering him to obtain his own social security card, welfare card, Medicaid card and conditional discharge. (Mem. and Order at 7). However, insofar as plaintiff had sought damages for the excessive force alleged in the Complaint and Amended Complaint, the judge denied defendants' motion for summary judgment. (*Id.* at 8). In doing so, the court adopted defendants' characterization of the plaintiff's claims as alleging a violation of the Eighth Amendment, holding that "[t]he question of whether the force used against the plaintiff rises to the level of an 'unnecessary and wanton infliction of pain' required to sustain an Eighth Amendment claim is an issue of material fact that precludes a grant of summary judgment." (Mem. and Order at 8) (citing *Hudson v. McMillian*, 503 U.S. 1, 7–8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

Following the issuance of the April 30, 1998 Memorandum and Order, defendants indicated a desire to file a motion for reconsideration relating to the lack of involvement of defendant Kass in one of the incidents and on the part of defendant White as it related to another incident. (*See* Report and Recommendation dated October 6, 2003 ("Rept") at 2). This Court thereafter appointed *pro bono* counsel for plaintiff who filed papers in opposition to the defendants' motion for reconsideration.[2] On October 6, 2003, this Court issued a Report and Recommendation, recommending that defendants' motion for reconsideration be denied. The Report and Recommendation was adopted by the district court on April 22, 2004.

Following an additional period of discovery, the parties consented to trial before the undersigned. At the final pretrial conference, defendants noted that plaintiff's counsel had submitted proposed jury charges which framed the issues for trial as claims of excessive force in violation of the Fourth Amendment, rather than under the deliberate indifference standard of the Eighth Amendment. In papers submitted on February 3, 2006, defendants concede that the law in the Second Circuit is unsettled as to whether claims of excessive force against parolees may be pursued under the Eighth Amendment or whether they are more properly brought as Fourth Amendment claims of excessive force. (Defs.' Mem. at 2–3).[3] Nevertheless, defendants argue that under the doctrine of law of the case, Judge Nickerson's decision eight years ago dictates that the Eighth Amendment standards apply to Mr. Turner's claims. (*Id.* at 3). Defendants' motion *in limine* also raises several other evidentiary issues which are addressed below.

*DISCUSSION*

(A) *Eighth Amendment Claims*

Since 42 U.S.C. § 1983 does not create substantive rights but " 'provides only a procedure for redress for the deprivation of rights established elsewhere,' " *Richardson v. C.O. Castro*, No. 97 CV 3772, 1998 WL 205414 at *2 (E.D.N.Y. Apr.24, 1998) (quoting *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993), *cert. denied*, 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994)), the Court must first determine the constitutional rights which plaintiff claims were violated by defendants' conduct. "In most

---

**2.** As noted in this Court's Report and Recommendation, it does not appear that defendants ever filed a formal motion for reconsideration, although they did file a reply memorandum in response to the submission by *pro bono* counsel. (*See* Rept. at 2).

**3.** Citations to "Defs.' Mem." refer to the defendants' Memorandum of Law in Support of Defendants' Motion *in Limine,* dated February 3, 2006.

instances, the right involved will be either the Fourth Amendment or the Eighth Amendment, the primary sources of constitutional protection against physically abusive official conduct." *Montavon v. Town of Southington,* No. 95 CV 1141, 1997 WL 835053, at *3 (D.Conn. Sept. 29, 1997).

In *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that "a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person ... are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." The Second Circuit has held that *Graham's* Fourth Amendment analysis "probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer." *Powell v. Gardner,* 891 F.2d 1039, 1044 (2d Cir.1989); *see also Freece v. Young,* 756 F.Supp. 699, 703 (W.D.N.Y.1991) (interpreting *Powell* as "requir[ing] application of the Fourth Amendment at least until plaintiff's pretrial custody status is ordered by a judicial officer ...").

■ Under this Fourth Amendment analysis, the question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor,* 490 U.S. at 397, 109 S.Ct. 1865 (citations omitted); *see also McLean v. City of Rome,* No. 95 CV 1713, 1998 WL 312350, at *9 (N.D.N.Y. June 8, 1998) (describing the reasonableness standard of this analysis as "an objective test, based on the perspective of a reasonable officer on the scene ..."). Among the factors the jury should consider in determining the objective reasonableness of the officer's conduct are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, [ ] whether the suspect is actively resisting arrest or attempting to evade arrest by flight," *Hemphill v. Schott,* 141 F.3d 412, 417 (2d Cir.1998) (citation omitted), "the need for the use of force, the relationship between the need for force and the amount of force used, [and] the extent of any injury ...." *Banks v. Person,* 49 F.Supp.2d 119, 125 (E.D.N.Y.1999) (citations omitted). "Objective reasonableness is established where " 'officers of reasonable competence could disagree' " as to the legality of the defendant's actions." *Id.* at 124. *See also Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

■ By contrast, where an individual has been convicted of a crime and seeks to challenge the conditions of confinement, including a claim of excessive force, the claim is analyzed as a violation of the Eighth Amendment's prohibition on "cruel and unusual punishment." *See Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *Blake v. Base,* No. 90 CV 0008, 1998 WL 642621, at *10 (N.D.N.Y. Sept.14, 1998). Under an Eighth Amendment analysis, the plaintiff must establish both a subjective and objective test. *Id.* (citing *Shabazz v. Pico,* 994 F.Supp. 460, 468 (S.D.N.Y.1998)). Under the objective component of the test, the plaintiff must establish that the official's conduct in inflicting punishment on him was " 'objectively harmful enough to establish a constitutional violation.' " *Id.* (quoting *Shabazz v. Pico,* 994 F.Supp. at 468). The Eighth Amendment analysis has also been applied in cases where a plaintiff

alleges that prison officials were "deliberately indifferent" to his medical needs, and that by ignoring these needs, the officials inflicted "cruel and unusual punishment" upon him. *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *rehearing denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977).

 The status of a parolee who seeks to bring claims of excessive force against his parole officer is unsettled in this Circuit. *See Blake v. Base,* 1998 WL 642621, at *10–11 and accompanying notes. Courts in the Fifth Circuit have held that constitutional claims by parolees are governed by an Eighth and Fourteenth Amendment analysis. *See, e.g., Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir.1996) (holding that Eighth and Fourteenth Amendments govern conditions of confinement for parolee detained on new offense); *Rankin v. Klevenhagen,* 5 F.3d 103, 105–06 (5th Cir.1993) (holding that the claim of a parolee, who was in pretrial detention on a new charge, would be analyzed under the Eighth Amendment where force was used in attempt to restore order in jail); *Earrey v. Chickasaw County, Miss.,* 965 F.Supp. 870, 873–75 (N.D.Miss.1997) (holding that parolee under detention in a county jail could bring a claim under the Eighth Amendment where he alleged that the prison officials failed to protect him from a beating by other prisoners).

These cases, however, are not binding on this Court, *see Blake v. Base,* 1998 WL 642621, at *10 n. 21 (citing *Thompson v. County of Franklin,* 987 F.Supp. 111, 119, 119 n. 30 (N.D.N.Y.1997)), and appear to be contrary to the approach followed by district courts in this Circuit. *See id.; see also Sloane v. Getz,* No. 00 CV 4708, 2002 WL 31132968, at *5–6 (S.D.N.Y. Sept.25, 2002) (analyzing claim by parolee that parole officers attacked him in a parole office and threw him to the floor under Fourth Amendment "excessive force" analysis), *overruled on other grounds,* 150 Fed.Appx. 86 (2d Cir.2005); *Banks v. Person,* 49 F.Supp.2d at 124–126 (utilizing Fourth Amendment analysis where parolee claims he was handcuffed and wrestled to the floor of the parole office by his parole officer).

In *Blake v. Base,* the district court, after distinguishing the cases that applied an Eighth Amendment analysis to claims brought by parolees, concluded that a parolee's claim that he was subjected to excessive force while in detention at a time prior to the time he had been arraigned on the new charges for which he was being detained is more properly analyzed under the Fourth Amendment. 1998 WL 642621, at *10 n. 21. This Court finds this analysis to be persuasive. Just because an individual has been convicted of a crime in the past and is on parole does not deprive him of his Fourth Amendment constitutional right to be free from excessive force if arrested on another crime. Although the Eighth Amendment " 'serves as the primary source of substantive protection . . .' " in cases where the defendant has been convicted, is incarcerated, and there is a deliberate use of excessive and unjustified force, *Graham v. Connor,* 490 U.S. at 395 n. 10, 109 S.Ct. 1865, in this instance, the excessive force was allegedly applied by officers in connection not with plaintiff's conviction, but rather with some new offense or violation they believed had been committed. At the time of the events at issue, plaintiff was no longer confined in an institution, and it is not even clear that he was under arrest for a new crime. He contends that under the *Graham v. Connor* analysis, he was a "free citizen," simply subject to reporting to his parole officers. (Pl.'s Letter Mem., dated Feb. 3, 2006, at 1). Thus, the Court concludes

that under these circumstances, a Fourth Amendment analysis would apply.

Defendants concede that under the case law, "[i]t appears that ... if a parolee is arrested or detained, any claim of excessive force for an incident occurring before the parolee is arraigned on new charges is examined under the Fourth Amendment." (Defs.' Mem. at 2 (citations omitted)). Nevertheless, defendants argue that because Judge Nickerson addressed the issue in his opinion as "whether the force used against plaintiff rises to the level of an 'unnecessary or wanton infliction of pain' under the Eighth Amendment," the law of the case requires this Court to charge the jury in accordance with Eighth Amendment standards. (*Id.* at 3).

■ The doctrine of law of the case essentially stands for the proposition that " 'a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.' " *United States v. Hussein,* 178 F.3d 125, 130 (2d Cir.1999) (quoting *North River Ins. Co. v. Philadelphia Reinsurance Corp.,* 63 F.3d 160, 164 (2d Cir.1995) (emphasis omitted)). Defendants contend that because Judge Nickerson determined that the Eighth Amendment claims survived the motion for summary judgment and since plaintiff never challenged that finding, he has waived his right to challenge that decision at this time. (Defs.' Mem. at 3).

■ The problem with defendants' reasoning is that nowhere in either plaintiff's Complaint or Amended Complaint does plaintiff reference the Eighth Amendment. Indeed, his pleadings, as noted earlier, do not contain any statutory or constitutional references other than a reference to the Eleventh Amendment. (Compl. at 3–4). As in the case of *Blake v. Base,* plaintiff's *pro se* pleadings here "can be construed in at least two different ways." 1998 WL 642621, at *10. While plaintiff's Complaint contains references to the "deliberate indifference" of the officers, suggesting an Eighth Amendment construct, the facts alleged also clearly implicate the use of excessive force by the officers during his detention in the parole office, raising Fourth Amendment concerns. In denying defendants' motion for summary judgment in part, Judge Nickerson found that there were issues of fact regarding the officers' conduct and the force used which prevented him from granting summary judgment. While the judge addressed the claim in his opinion as an Eighth Amendment claim, the judge was not asked to consider whether plaintiff's Complaint raised Fourth or Eighth Amendment issues, and there is nothing in the opinion to suggest that he ever considered the question now raised here. Rather, the issue, as presented to the judge by defendants in their motion papers, was framed in Eighth Amendment terms. Even though the plaintiff, who was *pro se* at the time, did not challenge the defendants' characterization of his claim, the issue was never presented to the court and therefore was never litigated, nor can it be considered the "law of the case."

To the contrary, given that neither the Fourth nor Eighth Amendment was explicitly referenced in plaintiff's *pro se* pleadings, the district court "in keeping with the well established principle that *pro se* complaints must be liberally construed," *Blake v. Base,* 1998 WL 642621, at *10 (citing *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (*per curiam*)) might, if it had been asked to consider the question, have concluded that both Amendments were implicated by plaintiff's Com-

plaint.[4] Indeed, had the district court been asked to consider the issue raised now for the first time, it may have, in keeping with the Second Circuit's admonishment to " 'interpret[ ] ... [a *pro se*'s complaint] to raise the strongest arguments that [it] suggest[s],' " *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir.1995) (citation omitted), arrived at the same conclusion as this Court—namely, that plaintiff's Complaint alleges a Fourth Amendment claim even though the Amendment is not specifically referenced therein.[5]

Accordingly, this Court construes plaintiff's claim as one of excessive force to be analyzed under the Fourth Amendment's objective reasonableness standard.

(B) *Evidence of Plaintiff's Seizures*

■ A claim for damages under 42 U.S.C. § 1983 has as its "basic purpose" the goal of "compensat[ing] persons for injuries that are caused by the deprivation of constitutional rights." *Carey v. Piphus*, 435 U.S. 247, 254, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Since civil actions under Section 1983 "are analogous to state common law tort actions, serving primarily the tort objective of compensation," *Townes v. City of N.Y.*, 176 F.3d 138, 146 (2d Cir.1999) (citing *Carey v. Piphus*, 435 U.S. at 254, 98 S.Ct. 1042), the type of damages available for a violation of Section 1983 is " 'determined according to principles derived from the common law of torts.' " *Id.* (quoting *Memphis Cmty. Sch.*

*Dist. v. Stachura*, 477 U.S. 299, 307, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) (considering compensatory damage award to teacher alleging Section 1983 violation)). Thus, in order to establish his claim for damages under Section 1983, plaintiff must establish that defendants' actions were a proximate cause of plaintiff's alleged injuries.

■ Defendants contend that because plaintiff does not intend to offer expert medical evidence at trial, plaintiff should be precluded from arguing that seizures he may have experienced days and weeks after the incident were caused by the alleged conduct of defendants. (Defs.' Mem. at 5–6). While defendants concede that plaintiff is not required to " 'exclude every other possible cause' of the injury," they assert that "[t]he etiology of seizures or convulsive disorders is not within the ken of lay jurors or plaintiff." (*Id.* (quoting *Schneider v. Kings Highway Hosp. Ctr., Inc.*, 67 N.Y.2d 743, 744, 500 N.Y.S.2d 95, 490 N.E.2d 1221 (1986) (citations omitted)). Plaintiff contends that he has no intention of asking the jury to assess damages relating to the seizures that he allegedly suffered after the incident, nor will he be presenting testimony or argument that explicitly ties the conduct of the officers to the seizures in terms of proximate cause. However, plaintiff candidly admits that the jury, in assessing damages for his alleged constitutional violations, may well "infer" such a connection.

4. It is also possible that in moving for summary judgment, defendants chose not to raise the Fourth Amendment excessive force claim, since it is clear that issues of fact would have precluded summary judgment on that claim for the same reasons cited by Judge Nickerson in refusing to dismiss the Eighth Amendment claim.

5. Indeed, equity dictates the Court's conclusion as well. For defendants to construe plaintiff's claims as Eighth Amendment

claims and then to argue later that the Eighth Amendment does not apply to claims by parolees in these types of circumstances, resulting in dismissal of all of plaintiff's claims, would produce a result contrary to Judge Nickerson's opinion, which contemplated a trial on the excessive force claims. Such a result would run contrary to the Court's responsibility to liberally construe the pleadings of a *pro se* party so as to effect justice.

The Court agrees that plaintiff's claim that he suffered seizures as a result of the alleged head trauma is not something that jurors could determine from their own knowledge or experience. *See Allinger v. City of Utica,* 226 A.D.2d 1118, 1119, 641 N.Y.S.2d 959 (4th Dep't 1996). " '[E]xpert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person.' " *Barnes v. Anderson,* 202 F.3d 150, 159 (2d Cir.1999) (citation omitted); *see also Gold v. Dalkon Shield Claimants Trust,* No. B–82–383, 1998 WL 351456, at *3 (D.Conn. June 15, 1998) (noting, "[m]edical evidence relating to causes of injury to the human body is not normally considered to dwell within the common knowledge of a layperson"). To allow the jury to make a finding of proximate cause, particularly in light of plaintiff's preexisting head injuries,[6] would amount to pure speculation on the jury's part in the absence of any medical evidence tying plaintiff's seizures to his alleged civil rights violations. The jury must not "reach its verdict based . . . upon speculation, but upon the logical inferences to be drawn from the evidence." *Schneider v. Kings Highway Hosp. Ctr., Inc.,* 67 N.Y.2d at 744, 500 N.Y.S.2d 95, 490 N.E.2d 1221.

Accordingly, unless plaintiff's medical records demonstrate the causal connection between his seizures and the actions of the officers, the Court will preclude any testimony regarding the seizures that occurred five days after the last incident alleged by plaintiff.

### (C) *References in Medical Records*

Defendants also seek to preclude or redact from plaintiff's medical records any reference that plaintiff told a mental health or medical health care provider that he suffered a seizure as a result of his parole officer's use of force.[7]

■ Generally, statements made for the purposes of medical diagnosis or treatment, including medical history, and a description of symptoms and pain, are admissible under the exception to the hearsay rule set forth in Rule 803(4) of the Federal Rules of Evidence. The Second Circuit has held that where the statements are made to the physician about the patient's condition and the physician relies on the statement in formulating his opinion and treatment plan, then such statements are generally admissible. *See O'Gee v. Dobbs Houses, Inc.,* 570 F.2d 1084, 1089 (2d Cir. 1978); *King v. Phillips,* No. 03 CV 4183, 2005 WL 1027545, at *2 n. 2 (E.D.N.Y. May 2, 2005).

---

**6.** Plaintiff's Complaint states that he "ha[s] a bullet lodged in [his] skull, rendering [him] handicapped . . . ." (Compl. at 3).

**7.** At the proceedings before the Court on February 6, 2006, defendants produced a record, entitled "Psych History," which was prepared by Dr. Kalaiselvi Rajendran, M.D., based on an examination date of October 21, 1996, more than three years after the incident, in which the plaintiff allegedly represented to the doctor as follows: "Plaintiff claims he does have convulsive disorder, but it has nothing to do with the head injury[;] it is due to probation officer banging his head." It is clear from the record that plaintiff was not seeking medical advice or treatment for his seizure disorder at the time he spoke with Dr. Rajendran, but rather was seeking help because he represented to the doctor, "I am afraid I am going to lose control." Plaintiff's counsel has represented that he has no intention of introducing this particular record into evidence, but that if there are other records with similar references or if defendants seek to introduce this record, plaintiff contends that the records should be produced without redaction by defendants.

■ In this case, however, plaintiff's statement, made to a doctor in October 1996, was not contemporaneous with the incident, nor was it even with months of the incident. More importantly, from a review of the doctor's report, it does not appear that this statement was relied on by the physician in his decision to treat the plaintiff and thus the statement would fall outside the scope of Rule 803(4).

In light of the Court's ruling precluding plaintiff from seeking damages for his seizures due to a lack of evidence to establish proximate cause, the Court grants defendant's motion to redact from plaintiff's medical records any statements he may have made to his health care providers regarding the cause of his seizures as not relevant.

### (D) Plaintiff's State Law Claims

Defendants seek to preclude plaintiff from asserting claims under state law, first because the claims were not presented to Judge Nickerson, and second, because under New York State law, "an officer or employee of the State Division of Parole may not be sued in his personal capacity." *Sloane v. Getz*, 2001 WL 504879, at *4 (citing N.Y.S. Exec. Law § 259-q). (*See* Defs.' Mem. at 15–17).

■ Although the Court rejects defendants' argument that the law of the case precludes claims under state law for the reasons addressed *supra* at 9–11, the law is clear that:

> "[n]o civil action shall be brought in any court of the state … against any officer or employee of the division [of parole], in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee."

N.Y.S. Exec. Law § 259–q(1) (McKinney's 2001). In analogizing Section 259q–1 to New York Corrections Law § 24, which prohibits suits against corrections officers for acts performed within the scope of employment, the court in *Sloane* held that the two statutes should be interpreted identically "with respect to immunity from suit." *Sloane v. Getz*, 2001 WL 504879, at *5 (citing *Oliver v. Cuttler*, 968 F.Supp. 83, 90 (E.D.N.Y.1997)). Even if the parole officer's conduct is in violation of the employer's rules and regulations, the *Sloane* court held that the officers were immunized from state law claims under Section 259–q. *Id.* at *5.

Accordingly, although plaintiff has requested that the Court charge the jury as to his now asserted state law claim of intentional infliction of emotional distress, the Court holds that the defendants are immune from such a claim "even if the defendants abused their offices and otherwise violated the plaintiff's rights during their interaction" with plaintiff. *Id.*

### (E) Impeachment with Prior Felony and Arrest Records

Pursuant to Rule 404(b) and Rules 608 and 609 of the Federal Rules of Evidence, defendants seek to cross-examine plaintiff and plaintiff's sister regarding any arrests or convictions. (Defs.' Mem. at 12–13). Defendants also seek to question plaintiff on the fact that he has used aliases in the past and to the extent that his record relates to parole supervision. (*Id.* at 13).

■ To the extent that defendants seek to question plaintiff about his use of false names or false identities, the Court finds that these areas of inquiry are a proper subject for cross-examination under Rule 608. *See Fletcher v. City of New York*, 54 F.Supp.2d 328, 333 (S.D.N.Y. 1999); *see also Brundidge v. City of Buffalo*, 79 F.Supp.2d 219, 227 (W.D.N.Y.1999).

To the extent that defendants seek to impeach plaintiff with his past criminal convictions, Rule 609(a) permits impeachment where the conviction is punishable by a term of imprisonment in excess of one year. Fed.R.Evid. 609(a). Before admitting such evidence, the Court must determine whether, under Rule 403, the probative value of the conviction outweighs any possible prejudice resulting from the introduction of such evidence. Fed.R.Evid. 403. This balancing requires an analysis of four factors: (1) the impeachment value of the prior crime; (2) the remoteness of the prior conviction; (3) the similarity of the past crime to the conduct at issue; and (4) the importance of the credibility of the witness. *See Daniels v. Loizzo,* 986 F.Supp. 245, 250 (S.D.N.Y. 1997); 4 Weinstein's Federal Evidence, § 609.04[1]-[2][a], 609.20.

At this point, without having any information regarding the nature of the plaintiff's prior convictions, when they occurred, and whether they relate at all to the alleged parole violations, the Court cannot adequately assess either the potential prejudice or the probative value of these prior convictions. As noted during the pre-trial conference, the Court will permit the defendants to inform the jury that plaintiff had been convicted of a crime, thus explaining why he was on parole at the time of the alleged incidents. Whether defendants will be permitted to cross-examine plaintiff about the facts and circumstances underlying this particular conviction or to question him about prior convictions will await further proffer by defendants of the relevant information necessary to conduct the Rule 403 balancing test.

**SO ORDERED.**