*1014 OPINION OF THE COURT
Christopher J. McCarthy, J.
Claimant, Janet Tomaino, has established by a preponderance of the credible evidence that the State of New York was liable in connection with an assault and battery against her when an unnamed court officer used excessive force during an arraignment proceeding. Her amended claim also alleges that defendant was negligent and grossly negligent in the selection, training and supervision of its court officers. No evidence was presented, however, in connection with the negligent training and supervision causes of action. Consequently, that branch of her claim is dismissed.
A bifurcated trial of the claim, addressing liability issues only, was held at the Court of Claims in Hauppauge, New York, on July 15, 2008. There were three witnesses: claimant; her husband, Santino Tomaino; and Lieutenant William Trentini, the supervisor of the court officers. The parties also were permitted to submit posttrial memoranda.
Facts
Claimant alleges that she was assaulted and battered by an unnamed court officer on the morning of August 27, 2004. She testified that she was in the Criminal Part of Suffolk County District Court in Central Islip, New York, to be arraigned before a judge in open court. Claimant said that she was handcuffed from behind at the time.
Ms. Tomaino agreed that the courtroom where she was arraigned was a big, well-lit, room with perhaps 40 or 50 other people present. Her lawyer and a district attorney stood nearby. The court officer was behind her. She further agreed that the judge was not far away from her and that they were separated by a railing or barrier, with a flat-topped surface, upon which claimant could write.
Ms. Tomaino testified that the court officer brought her before the judge to be arraigned and that, while she was before the judge, the court officer suddenly grabbed her two shoulders and forced them together and backwards. A few seconds later, the judge directed the officer to release claimant from her handcuffs so that she could sign a paper. Claimant testified that, as she proceeded to sign the paper, the court officer grabbed her right elbow forcefully, pushed and pulled on it, and then jerked it backwards. She said that the court officer’s actions caused her immediate, severe pain in her shoulders and arm. On cross- *1015 examination, Ms. Tomaino said she did not know whether the judge or her lawyer saw what happened to her. She agreed, however, that she did not cry out, or say anything to her lawyer or the judge.[1] Claimant said that she “was too petrified to say anything or do anything.”[2] She also confirmed that she signed the document with her right hand after she had been injured.
On cross-examination, claimant agreed that she was arrested by Suffolk County police the day before the incident, was in custody overnight, and also was injured by the Suffolk County police during that period of incarceration preceding her arraignment. She alleges that the Suffolk County police: pushed and shoved her, caused her to fall, scraping and bruising her knees; frisked her roughly, resulting in abrasions to her back; and put her in handcuffs that caused swelling and bruising to her wrists. She filed a federal lawsuit concerning her alleged injuries at the hands of the Suffolk County police.
Claimant testified that she sought medical attention later that evening after she was released from custody. She presented at the hospital complaining of shoulder pain and pain in her right elbow, hands, fingers and her knees. Ms. Tomaino graded the severity of her pain as an eight on a scale of 1 to 10 (see exhibit 1 at 2). She described her discomfort as “a nagging soreness, like someone beat me up. It was just horrible.” Mr. Tomaino testified that he took his wife to the hospital and confirmed that she was in a lot of pain. Hospital tests confirmed that her shoulder was not fractured or broken. She spent a couple of hours at the hospital that night and was given pain medication (see exhibit 1 at 1-12). Claimant testified that, after the incident, she could not fully extend her arm because of soreness in her right shoulder and elbow. She kept her right arm in a sling for about 10 days thereafter.
Claimant returned to the hospital on August 31, 2004 complaining of continued pain (see exhibit 1 at 13-22). Pain medication again was given to her. Ms. Tomaino said that she was told to soak the affected area. Her husband applied liniment to her shoulders each night for about two weeks, during which time her pain diminished and then abated. On cross-examination, she agreed that she suffered no permanent injury *1016 to her shoulder and it recovered completely within two to three weeks.
Claimant reported that she remains “totally upset to this day” about the way she was treated and continues to suffer emotional distress. She does not want to go to court, or watch courtroom dramas on television. “I fear them.” Claimant testified that the case in which she was being arraigned on the day of the incident subsequently was dismissed (see exhibit 2).
Lieutenant William Trentini testified that he has been a New York State court officer for 21 years. He has worked for 18 years in the in-custody arraignment part at the courthouse in Central Islip, New York, the past 13 years as a supervisor. He explained procedures in the courtroom. Seven court officers Eire assigned to the courtroom. Three more are assigned to an adjacent hallway that leads to the Suffolk County Sheriff’s prisoner detention area. When a prisoner’s name is called, one of the court officers brings him or her before the judge. The prisoner’s cuffs are removed if he or she needs to sign a document.
Ms. Tomaino testified that, as far as she knew, she did not file any complaint or grievance agEdnst the court officer that day, or at anytime thereafter. Lieutenant Trentini, likewise, testified that he searched the records of his office and found no evidence of a complaint filed by claimant. Lieutenant Trentini stated that he first became aware of the claim seven months ago and tried, unsuccessfully, to identify the court officer involved in the incident. He explained that 90 court officers work in Suffolk County District Court. Additional court officers work at the same Central Islip facility in Supreme Court Emd Family Court. While the court officers work according to a schedule, the witness noted that daily adjustments have to be made because of illnesses, vacations, court appearances, training sessions, etc. Even those officers that are on duty may be absent from the courtroom for short periods for personal breaks and to take phone calls. He testified that no records are kept concerning the individual officers that rotate through the arrEdgnment part on any given day, nor is a log kept of the officer that brought an individual prisoner before the court.
He explained that, if claimant had complained to him on the day of the incident, he would have tried to find out what happened. He noted that claimant also could have lodged a complaint with one of the two captains on duty outside the arraignment part, or with the inspector general’s office, which serves as the internal affairs bureau for his command. Lieuten *1017 ant Trentini stated that he would refer any complaint of physical abuse to a captain.
On cross-examination, Lieutenant Trentini agreed that it was normal for court officers to touch prisoners during the arraignment process by tapping them on the arm, for example, in order to direct them when they are called before the court and when they are moved to and from the seating and holding areas.
Law
At the outset, the court must determine the standard against which defendant’s conduct should be measured. For the reasons set forth below, the court determines that a standard of objective reasonableness applies to this claim.
It is settled that claims alleging that excessive force was used by law enforcement personnel during arrests, investigatory stops or other prearraignment seizures are analyzed under the Fourth Amendment to the Federal Constitution and its standard of objective reasonableness (Graham v Connor, 490 US 386, 395 [1989]; Koeiman v City of New York, 36 AD3d 451, 453 [1st Dept 2007]; Ostrander v State of New York, 289 AD2d 463, 464 [2d Dept 2001]; Campagna v Arleo, 25 AD3d 528 [2d Dept 2006]; Passino v State of New York, 260 AD2d 915, 916 [3d Dept 1999], Iv denied 93 NY2d 814 [1999]; Mazzariello v Town of Cheektowaga, 305 AD2d 1118, 1119 [4th Dept 2003]).
Graham v Connor did not resolve, however, whether that same Fourth Amendment analysis applies in instances of alleged excessive force that occur “beyond the point at which arrest ends and pretrial detention begins” (490 US at 395 n 10). That question, as well as the precise demarcation point between those two phases of custodial status, appear to remain unsettled. The parties did not cite any New York State court precedent, nor did the court find one. However, federal cases that address the scope of the Fourth Amendment’s standard of objective reasonableness in the context of alleged violations of rights under 42 USC § 1983 do provide some guidance. The Second Circuit has stated that “the Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer” (Powell v Gardner, 891 F2d 1039, 1044 [2d Cir 1989]; see Turner v White, 443 F Supp 2d 288, 293 [ED NY 2005]; Blake v Base, 1998 WL 642621, 1998 US Dist LEXIS 24659 [ND NY 1998]). Thus, the standard of objective reasonableness would appear to apply
*1018 “at least until [Claimant’s] pretrial custody status is ordered by a judicial officer, as upon arraignment either resulting in an order of pretrial regulatory detention or the setting of bail conditions not yet met. It makes sense to hold the police to an objective standard of reasonableness before a judicial officer commits an arrestee to a pretrial holding facility the administration of which is customarily accorded some degree of deference by federal courts. Until the point when a judicial officer intervenes, there is little reason to add, to the Fourth Amendment objective standard of reasonableness” (Freece v Young, 756 F Supp 699, 703-704 [WD NY 1991]; see Turner v White, 443 F Supp 2d at 294-295; Blake v Base, supra).
The court also notes that a Fourth Amendment analysis was employed in a case cited by defendant (Cunninham v New York City, 2007 WL 2743580, 2007 US Dist LEXIS 69801 [SD NY 2007]).
Claimant alleges that excessive force was used against her at the arraignment itself — at the very point when her custodial status was being considered by a judicial officer. Thus, the court concludes that the Fourth Amendment’s standard of objective reasonableness is the proper metric by which to measure defendant’s conduct. As such, the court officer was permitted to apply “force that is objectively reasonable under the prevailing circumstances” (Passino v State of New York, 175 Misc 2d 733, 736 [Ct Cl 1998], affd 260 AD2d 915 [3d Dept 1999], lv denied 93 NY2d 814 [1999]; see PJI 3:4; 62A NY Jur 2d, Government Tort Liability § 131). The State can be held liable, however, for assault and battery, if excessive force is applied (Jones v State of New York, 33 NY2d 275, 279-280 [1973]). Determining whether excessive force was used in a particular instance requires “a fact-specific analysis in which an array of factors may be relevant, including the nature of the officer’s intrusion, the severity of the crime, whether the suspect posed an immediate threat and whether the arrest was actively resisted” {Passino v State of New York, 175 Mise 2d 733, 736 [1998]; see Graham v Con-nor, 490 US 386, 396 [1989]).
Finally, resolution of excessive force claims may depend upon an assessment of witness credibility and the weight to be ascribed to the evidence by the trial court in resolving factual disputes (Wester v State of New York, 247 AD2d 468 [2d Dept 1998]; Davis v State of New York, 203 AD2d 234 [2d Dept 1994]; *1019 see Burton v State of New York, 283 AD2d 875, 877 [3d Dept 2001]; Rice v State of New York, Ct Cl, June 19, 2006, Hard, J., claim No. 107632 [UID No. 2006-032-505]).
Discussion
Upon consideration of all the evidence, including a review of the exhibits and listening to the witnesses testify and observing their demeanor as they did so, the court finds that claimant has met her burden and established by a preponderance of the credible evidence that excessive force was used against her by the court officer during the arraignment proceeding. The court credits the testimony of the three witnesses, whom it found to be sincere, credible and forthright.
Claimant’s uncontroverted testimony is that the court officer grabbed her two shoulders and forced them together and backwards. Later, he grabbed her right elbow forcefully, pushed and pulled on it, and then jerked it backwards. She testified that these actions frightened her and caused severe pain. As a result, she went to the hospital twice. On each occasion, she was given pain medication. While her physical injuries appear to have resolved themselves within a few weeks, there is nothing in the record to justify the application of such force by the court officer, or to suggest that it was objectively reasonable under the circumstances. Indeed, if, as in this claim, “it appears that there was no real resistance, any force is excessive” (Hinton v City of New York, 13 AD2d 475, 476 [1st Dept 1961, Steuer, J., dissenting]).
Defendant attempted, unsuccessfully, to impeach claimant’s credibility by stressing that the incident took place in open court with scores of people present. During the trial of this claim, the court observed Ms. Tomaino’s shy, reticent, somewhat timid, demeanor. It credits her explanation that she did not cry out in pain because she was petrified and frightened. Moreover, at the arraignment, Ms. Tomaino’s unfamiliarity with court proceedings was noted since it was her “first contact with the criminal justice system” (exhibit A at 4).
The State noted that the certified transcript of the arraignment proceeding does not indicate that there was any disturbance or outcry. It seems to the court, however, that the observation cuts both ways. The transcript, likewise, provides no justification for the court officer to have initiated anything more than casual physical contact, such as the tap on the arm described by Lieutenant Trentini. Under such circumstances, *1020 the court finds that the grabbing and jerking motions to which claimant was subjected constituted excessive force.
Finally, Lieutenant Trentini testified that he might have been able to identify the court officer in question if claimant had complained about her treatment at the time. In this regard, the court simply notes that claimant timely filed her claim with the clerk of the court. Defendant did not contend that the claim was not timely served upon the Attorney General. It was neither claimant’s burden, nor her responsibility, to do more. Certainly, she was not obliged to be cognizant of the limitations in the recordkeeping procedures used by court officers at Suffolk County District Court and to adjust the notice she provided defendant accordingly.
Lieutenant Trentini provided a reasonable explanation why it may be impracticable — or at least inconvenient — to keep more precise records concerning the officers on duty in the court and adjacent hallway at any given time, and which of them escorted a particular prisoner to be arraigned before the judge. Nevertheless, it remains defendant’s burden either to provide testimony that would contradict claimant’s credible assertions that excessive force was used, or to provide a justification that would permit the court to conclude that the use of such force was objectively reasonable under the circumstances. Defendant failed to do so. It cannot shift that burden onto claimant because of the constraints imposed upon it by its own recordkeeping.
Conclusion
The court finds defendant 100% liable for the court officer’s use of excessive force against claimant. As noted above, that branch of claimant’s amended claim alleging negligent training and supervision is dismissed.
All motions and cross motions are denied as moot. All objections upon which the court reserved determination during trial, and not otherwise addressed herein, are now overruled.

. The certified copy of the arraignment proceeding contains no indication that any disturbance or other disruption occurred, nor does it include any comment by the judge or claimant’s lawyer (see exhibit A).

. All quotations not otherwise attributed are taken from the electronic recording of the trial.